**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THOMAS E. GORE, SR.,** | ) | |
| Plaintiff | ) | **Civil Action No. 14-224 Erie** |
| | ) | |
| v. | ) | **District Judge Fischer** |
| | ) | **Magistrate Judge Baxter** |
| **MILLCREEK TOWNSHIP, et al.,** | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.     RECOMMENDATION

It is respectfully recommended that Defendants' motion for summary judgment [ECF No. 24] be granted, that judgment be entered in favor of Defendants Millcreek Township, Erie County, Pennsylvania ("Millcreek") and Brian P. McGrath ("McGrath") and against Plaintiff on all claims against them in this case, and that the matter as against Defendant Joseph S. Kujawa ("Kujawa") be dismissed with prejudice for Plaintiff's failure to serve Kujawa within 120 days of the filing of the Complaint as required by Rule 4(m) of the Federal Rules of Civil Procedure.[1]

### II.     REPORT

#### A.     Relevant Procedural History

Plaintiff Thomas E. Gore, Sr. ("Plaintiff" or "Gore"), instituted this civil action on August 25, 2016, against Defendants Millcreek and Millcreek Township Supervisors McGrath and Kujawa, asserting that he was denied employment with Millcreek on account of his race, as

---

[1] As amended effective December 1, 2016, Rule 4(m) now provides that a defendant has 90 days after filing the complaint to effect service.

prohibited by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII") (Count I); and as prohibited by section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("section 1981" or "§ 1981") and the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983 ("section 1983" or "§ 1983") (Count II). In addition to suing Millcreek in Count I and all Defendants in Count II, Gore sues McGrath and Kujawa for "aiding and abetting" discrimination in violation of the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. § 951 *et seq.* (Count III). Finally, Gore appears to assert as well under Count I and perhaps under Count II, but it is by no means clear, that he "arguably was retaliated against when he sought to apply for positions because his application was supported by Larry Manus, [an African-American employee of Millcreek] who was ridiculed, maligned and derided by the Defendant Management and Staff." (ECF No. 2 at ¶ 20(d)).

After instituting this action, Gore filed Returns of Service, [ECF Nos. 10 and 11], indicating that Defendants McGrath and Millcreek Township were served with the Summons and Complaint on March 17, 2015. No Return of Service regarding Defendant Kuzawa was ever filed. After the close of discovery, Defendants filed their present motion for summary judgment as to all claims on May 26, 2016, [ECF No. 24], with amended brief in support. [ECF No. 28]. After having been granted an extension, Gore filed his response to Defendants' motion on July 8, 2016. [ECF No. 31], and Defendants filed a reply on July 22, 2016 [ECF No. 36]. The motion for summary judgment is now ripe for consideration.

## B.    Relevant Factual History[2]

Despite attempts, Gore has never been employed by Defendant Millcreek. ([Defendants'
Statement of Undisputed Facts], ECF Nos. 28 at ¶ 1; 31 at ¶ 1).  On August 26, 2009, Millcreek
posted for a position as Streets Department General Laborer. (ECF No. 28, ¶ 2; 31, ¶ 2).  In
September, November and December of 2009, Gore discussed the posted position of Streets
Department General Laborer with Defendant McGrath, Defendant Kujawa and Thomas Curtis,
but was not hired by Millcreek.  (ECF Nos. 28, ¶¶ 1, 3; 31, ¶¶ 1, 3).  On January 3, 2012,
Millcreek again posted for a position as Streets Department General Laborer and Gore was
interviewed by Diane Lyons and Mark Dietz, but again Gore was not hired.  (ECF Nos. 28, ¶ 4;
31, ¶ 4).  As to the positions of Streets Department General Laborer posted in 2009 and in the
beginning of 2012, Gore alleges that despite his being qualified for the positions, white
individuals were hired for those positions. (ECF No. 2 at ¶¶ 9, 10, 14).  On or about September 8,
2012, Gore dual filed a charge of discrimination with the Equal Employment Opportunity
Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC") ("the
Charge" or "Charge of discrimination).[3]  (ECF Nos. 28 ¶ 7 & Ex. 1; 31, ¶ 7).

Subsequently, on November 27, 2012, Millcreek posted for a position as Sewer
Department Laborer and on January 25, 2013 posted for a position as Parks and Recreation

---

[2] The brief factual history is drawn from the statement of undisputed facts contained in Defendants' Amended Brief in
Support of Their Motion for Summary Judgment [ECF No. 28] to the extent the same have not been opposed by
Plaintiff with evidence, and also is drawn from the undisputed evidence in the record.  Because Gore offers no
evidence in opposition and instead relies on allegations, certain of his allegations are referred to and delineated as
such where helpful in analyzing and resolving this motion.
[3] The dual filed Charge filed with the agencies appears to have been signed by Gore on November 12, 2012. (ECF

Laborer, for which Gore applied and expressed his interest to Diane Lyons, (ECF Nos. 28 ¶¶ 5, 6; 31, ¶¶ 5, 6; 2 at ¶¶ 11, 12), and for which he was not hired. (ECF Nos. 28 at ¶ 1; 31 at ¶ 1). Regarding the position of Sewer Department Laborer in late 2012, for which Gore applied and was not afforded an interview, Gore asserts that he does not know who was hired for the position. (ECF No. 2 at ¶ 11). Gore likewise does not indicate who was hired for the Parks and Recreation Laborer position posted in 2013. Gore alleges that he was qualified for all of the positions for which he applied. (ECF No. 2 at ¶¶ 8, 10, 11, 12).

Defendants McGrath and Kujawa are elected Supervisors on the Board of Supervisors of Millcreek. (ECF No. 28, Ex. 2 ¶1, Ex. 3 ¶ 1). Neither McGrath nor Kujawa had the authority to hire Gore. (ECF No. 28, Ex. 2 ¶4, Ex. 3 ¶ 4). McGrath and Kujawa at most spoke to Gore at chance meetings at the municipal building or in the community at large, but neither ever interviewed him for any of the positions with Millcreek. (ECF Nos. 28, Ex. 2 ¶¶ 3, 6, Ex. 3 ¶3, 6).

On January 28, 2014, the PHRC issued to Gore a right to sue letter on the Charge he had filed in the Fall of 2012 regarding the Streets Department Genera Laborer position posted in 2012. On August 28, 2014, Gore filed the Complaint in this action. (ECF Nos. 28 ¶ 8; 31, ¶ 8).

Gore, an African-American, alleges in particular that he was discriminated against on the basis of race when he was not hired for the position of Street Department General Laborer in 2009, (ECF No. 2 at ¶¶ 8-9); when he was not hired for the position of Street Department General Laborer posted in the beginning of 2012, (ECF No. 2 at ¶ 10); when he was not hired for

---

28 at Ex. 1).

the position of Sewer Department Laborer posted on November 27, 2012, (ECF No. 2 at ¶ 11); and also when he was not hired for the position of Parks and Recreation Laborer posted on January 25, 2013.  (ECF No. 2 at ¶12).

### C.     Standard of Review

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Under Rule 56, the district court must enter summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (19896). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323 quoting Fed.R.Civ.P. 56.

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex, 477 U.S. at 330. See also Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004). When a non-moving party would have the burden of proof at trial, the moving party has no burden to negate the opponent's claim. Celotex, 477 U.S. at 323.

The moving party need not produce any evidence showing the absence of a genuine issue of material fact. Id. at 325. "Instead, … the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Id. After the moving party has satisfied this low burden, the nonmoving party must provide facts showing that there is a genuine issue for trial to avoid summary judgment. Id. at 324. "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." Id. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001); Garcia v. Kimmell, 381 F. App'x 211, 213 (3d Cir. 2010) (quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005) (the non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue.")).

In considering the evidentiary materials submitted on summary judgment, "courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." Scott v. Harris, 550 U.S. 372, 378 (2007) (internal quotation marks and alterations omitted). See also Doe v. Cnty. of Centre, Pa., 242 F.3d 437, 446 (3d Cir. 2001) (when applying this standard, the court must examine the factual record and make reasonable inferences therefrom in the light most favorable to the party opposing summary judgment).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Anderson, 477

U.S. at 248, 255 ("only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."). In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. Id. at 249. The court may consider any evidence that would be admissible at trial in deciding the merits of a motion for summary judgment. Horta v. Sullivan, 4 F.3d 2, 8 (1st Cir. 1993).

### D. Discussion

Defendants argue that the matter as against Defendant Kuzawa should be dismissed for failure to serve and that Defendants are entitled to summary judgment because: Gore cannot establish with evidence any of his claims for discrimination or retaliation in failure to hire; Gore's § 1983 claim for alleged failures to hire occurring prior to August 24, 2012 are barred by the applicable statute of limitations; Gore cannot establish municipal liability under § 1983; Gore failed to exhaust administrative remedies required for his Title VII claim as to all but a single alleged failure to hire indicated in his charge of discrimination; and Gore's PHRA claim against McGrath and Kuzawa for aiding and abetting discrimination is barred for failure to name either of them as respondents or anywhere mention either of them in the dual filed PHRC/EEOC Charge and also fails for lack of any factual allegations and evidence. (ECF No. 28 at 3, 6, 9, 10, 12 & n.4).

Gore, in response to Defendants' motion for summary judgment, instead of citing to and

providing any evidence in support of his claims, provides merely argument, recites some of the allegations in his Complaint and relies on the complaint filed by another individual in a separate action, maintaining nothing more than that he in fact has stated claims against Defendant Millcreek pursuant to 42 U.S.C. § 1983 and Title VII. (ECF No. 31 at 2-3). Describing his § 1983 claim, Gore states that he "asserts that despite numerous applications for positions for which he was qualified, he was not hired while less qualified whites were hired." (ECF No. 31 at 2). According to Gore, making these assertions is all he needs to do to establish a constitutional violation and discrimination and defeat summary judgment. (ECF No. 31 at 3). In addition to producing no evidence in opposition to summary judgment, Gore utterly ignores the arguments regarding Defendants McGrath and Kuzawa and likewise does not address Defendants' limitations and failure to exhaust administrative remedies arguments.

### 1. Failure to Serve Defendant Kuzawa

Defendants assert as a threshold matter that the claims against Defendant Kuzawa should be dismissed for lack of service. Gore does not offer any opposition, argument or explanation whatsoever regarding the failure of service on Defendant Kuzawa. Federal Rule of Civil Procedure 4(m) instructs that if a defendant is not served within the requisite time period "after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). "[T]he party asserting the validity of service bears the burden of proof on that issue." Grand Entertainment Group Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 488 (3d Cir. 1993) (citation omitted). The Court of Appeals for the Third Circuit has

recognized that "district courts possess broad discretion to either dismiss the plaintiff's complaint for failure to effect service or to simply quash [defective] service of process." <u>Umbenhauer v. Woog</u>, 969 F.2d 25, 30 (3d Cir. 1992).

By order dated January 8, 2015, the District Court ordered that the complaint would be dismissed as to all defendants unless Gore showed good cause as to why service had not been made within one hundred and twenty (120) days of the filing of the complaint. [ECF No. 6]. Gore responded with a request for an extension of time to serve and by indicating confusion regarding the proper manner of service. [ECF No. 7]. By order dated January 20, 2015, the District Court then extended the time on motion until March 20, 2015 for Plaintiff to effectuate service on all defendants. [ECF No. 8]. The docket reveals returns of service as to Defendants Millcreek Township and Defendant McGrath only. [ECF Nos. 10 and 11].

Here, Defendant Kuzawa does not argue defective service but rather asserts there has been no service on him at all. Gore does not show any attempt to serve Defendant Kuzawa or otherwise explain the failure of service. Accordingly, it is recommended that the Court order that the case against Defendant Kuzawa be dismissed for failure to effect service.

### 2.    Race Discrimination – Failure to Hire

Count I of the Complaint alleges that Defendant Millcreek unlawfully discriminated against Gore by subjecting him to disparate treatment on the basis of race in failing to hire him in violation of Title VII. Similarly, Count II of the Complaint alleges, pursuant to § 1983, that Defendants Millcreek, McGrath and Kujawa unlawfully discriminated against him on the basis of race in failing to hire him in violation of § 1981 and the Fourteenth Amendment. Finally, Count

III of the Complaint alleges that Defendants McGrath and Kujawa aided and abetted the

discrimination against Gore on the basis of race in failing to hire him.[4]

The Third Circuit has held that the legal standard applicable to a Section 1981 case is

identical to the standard in a Title VII case. Brown v. J. Kaz, Inc., 581 F.3d 175, 181-82 (3d Cir.

2009) ("[T]he substantive elements of a claim under section 1981 are generally identical to the

elements of an employment discrimination claim under Title VII"); Anderson v. Wachovia Mort.

Corp., 621 F.3d 261, 270 (3d Cir. 2010) ("In the absence of direct evidence of discrimination,"

the familiar burden-shifting framework applicable to Title VII cases applies). A claim for denial

of Equal Protection under the Fourteenth Amendment through discrimination in employment

brought pursuant to § 1983 also is analyzed under the familiar standard employed in Title VII

cases. Mitchell v. City of Pittsburgh, 995 F.Supp.2d 420, 435 (W.D. Pa. 2014) (citing Stewart v.

Rutgers, The State University, 120 F.3d 426, 432 (3d Cir. 1997)). Similarly, courts have

uniformly interpreted the PHRA consistent with Title VII. See Mitchell, 995 F.Supp.2d at 435;

Harris v. SmithKline Beecham, 27 F.Supp.2d 569, 576 (E.D.Pa. 1998); Clark v. Commonwealth

of Pennsylvania, 885 F.Supp. 694, 714 (E.D.Pa. 1995); Violanti v. Emery Worldwide A-CF Co.,

847 F.Supp. 1251, 1257 (M.D.Pa. 1994). Thus, Gore's race discrimination claims will be

uniformly analyzed under the standards applicable to a Title VII case.

Title VII cases not involving direct evidence of discrimination, such as this one, are

---

4

McGovern v. City of Philadelphia, 554 F.3d 114, 120-121 (3d Cir. 2009), provides that a cause of action
for damages under § 1983 is the exclusive remedy for violation by state governmental entity of rights
guaranteed in § 1981.

examined according to the burden-shifting framework that was first established by the United States Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). Within this framework, Plaintiff must first establish a *prima facie* case of discrimination in failure to hire by proving the following: (i) he is a member of a protected class; (ii) he applied for and was qualified for the position in question; (iii) he was not hired despite his qualifications; and (iv) after his rejection, the position for which he applied remained open or was "filled in a manner giving rise to an inference of discrimination," <u>Alja-Iz v. U.S. Virgin Islands Dep't. of Educ.</u>, 626 F. App'x 44, 46 (3d Cir. 2015)(affirming dismissal of claim where plaintiff only alleged facts to show that he applied for a position for which he was qualified and was told he would not be hired); <u>see</u> <u>Makky v. Chertoff</u>, 541 F.3d 205, 214 (3d Cir. 2008), <u>citing</u> <u>McDonnell Douglas</u>, 411 U.S. at 802. Proof of these basic facts raises an inference of discrimination, which is given the force and effect of a rebuttable presumption. <u>Texas Department of Community Affairs v. Burdine</u>, 450 U.S. 248 (1981).[5] The fourth prong may be met with a showing that the position was filled by someone not belonging to the protected class, but that is not always required,[6] <u>Olson v. General Elec. Astrospace</u>, 101 F.3d 947, 941 (3d Cir. 1996) (the fourth prong <u>may</u> be met with a showing that a person outside of the plaintiff's protected class was hired); <u>see also</u> <u>McDonnell</u>, 411 U.S. at 802 (plaintiff may meet the fourth prong by showing that despite the

---

5

Defendants center their argument on the *prima facie* case, and therefore, the court need not address the remaining analysis provided in the burden-shifting framework.

6

Defendants and Plaintiff appear to incorrectly assume certain additional requirements of a *prima facie* case of discrimination. <u>See</u>, <u>e.g.</u>, (ECF Nos. 28 at 17; 31 at 2). For example, Defendants appear to posit as part of the *prima facie* case that a plaintiff must show that they were at least as qualified as the individual ultimately hired, (ECF No. 28 at 17), however, this requirement is not part of a required *prima facie* case, but rather a plaintiff must show that

employer rejecting the qualified plaintiff it continued to seek applicants with plaintiff's qualifications), as there is a flexible approach to meeting this fourth prong. Pivirotto v. Innovative Systems, Inc., 191 F.3d 344, 357 (3d Cir. 1999).

Here, Defendants assert that Gore cannot meet his burden of proof regarding the *prima facie* case, including that he was qualified for the positions and that despite his qualification he was not hired under circumstances raising an inference of discrimination, (ECF No. 28 at 16), because, as they point out, Gore conducted no discovery. Moreover, as to the positions of Sewer Department Laborer posted in late 2012 and Parks and Recreation Laborer posted in 2013, Gore does not even allege a scenario that would raise an inference of discrimination, much less produce any evidence in support.

As to the *prima facie* case, Gore generally alleges in his complaint that he was qualified for positions and white individuals were hired for the positions of Street Department General Laborer posted in 2009 and early 2012. In opposition to summary judgment, he does not come forward with any evidence regarding the required qualifications for these positions, his qualifications, and the factual circumstances giving rise to an inference of discrimination, such as that the employer continued to look to fill the positions, or alternatively, that the hired individuals are outside the protected class. He comes forward with no evidence whatsoever. Instead, Gore responds only with bald arguments from his Complaint and with citation to a court complaint filed in another action by another individual, namely the complaint by an African American employee of Millcreek, Larry Manus ("Manus"), filed in Manus v. Millcreek

---

they were qualified for the position.

Township, W.D. Pa. Civil Act. No. 14-26. See Manus v. Millcreek Township, 2016 WL 4661393 (W.D. Pa. Sept. 6, 2016) (granting summary judgment in favor of Defendants). In essence, Gore argues that the only basis for the failure to hire him must have been his race. However, he provides no evidence or even facts to support his position, but rather only speculation. It is insufficient for Gore to sustain his claims "simply by asserting an event and then asserting that it was motivated by racial bias." Davis v. City of Newark, 285 F. App'x 899, 902–03 (3d Cir.2008). Accordingly, Millcreek is entitled to summary judgment.

To hold McGrath and Kujawa liable for discrimination as individual defendants under § 1983, Gore also most show that they somehow purposefully discriminated against him. Hafer v. Melo, 502 U.S. 21, 25 (1991). The Complaint asserts that McGrath and Kujawa discriminated against Gore by not evaluating him or his "interview presentations fairly, equitably and lawfully." (ECF No. 2 ¶ 26). Defendants provided the declarations of McGrath and Kujawa stating that neither of them ever interviewed Gore and that their contact with him consisted only of chance meetings. (ECF No. 28, Ex. 2, McGrath Declaration; Ex. 3, McGrath Declaration). As Gore offers no evidence in support of his vague allegations against McGrath and Kujawa. Thus, as discussed further *infra* regarding the claim against McGrath and Kujawa for aiding and abetting discrimination, Gore also failed to adduce any evidence from which a reasonable jury could find that McGrath or Kujawa engaged in any discrimination against him.

Based on the foregoing, the Plaintiff has failed to establish a *prima facie* case of race discrimination in failure to hire and has failed to establish any discriminatory conduct by McGrath and Kujawa. As a result, summary judgment should be granted in favor of Defendants

Millcreek and McGrath[7] as to Plaintiff's claims for discriminatory failure to hire under Title VII,

the PHRA, and for violation of § 1981 and the Fourteenth Amendment brought under § 1983.

### 3.        Municipal Liability Under Section 1983 for Discrimination

Under <u>Monell v. Dep't of Soc. Serv. of City of New York</u>, 436 U.S. 658, 694 (1978),

> a local government may not be sued under § 1983 for an injury inflicted solely by
> its employees or agents. Instead, it is when execution of a government's policy or
> custom, whether made by its lawmakers or by those whose edicts or acts may
> fairly be said to represent official policy, inflicts the injury that the government as
> an entity is responsible under § 1983.

436 U.S. at 694.  <u>Monell</u> unquestionably involved an official policy of the governmental

entity as the moving force of the constitutional violation as it involved official policy

requiring the unconstitutional result—a discriminatory policy requiring pregnant

employees to take unpaid leave before leave was required for medical reasons. 436 U.S.

at 694.

In order to establish municipal liability for discrimination under §1983, in

addition to proving an underlying deprivation of his right to be free from discrimination

based on race, <u>Monell</u>, 436 U.S. at 658, Gore must prove the existence of a policy or

custom that resulted in a constitutional violation. 436 U.S. at 694-95. "To establish the

necessary causation, a plaintiff must demonstrate a 'plausible nexus' or 'affirmative link'

between the municipality's custom and the specific deprivation of constitutional rights at

issue." <u>Bielevicz v. Dubinon</u>, 915 F.2d 845, 850 (3d Cir. 1990). In particular, Gore must

---

7

Defendants assert that should the Court not dismiss the action as against Defendant Kuzawa for the failure to effect
service, then Defendant Kuzawa would be entitled to summary judgment on the same bases as Defendant McGrath.

establish that the claimed policy or custom was the "moving force" causing the violation of his constitutional rights. Grayson v. Mayview State Hosp., 293 F.3d 103, 107 (3d Cir. 2002) (citation omitted).

Gore contends that he has established municipal liability under Monell as follows: 1) the requirement to show a constitutional violation is met by showing that he applied for positions for which he was qualified and less qualified white individuals were hired instead; 2) the requirement to show a custom of racial discrimination by the municipality is met by showing that Millcreek only employs one African American but has over one hundred employees and that the one African American employee, Manus, is subjected daily to racial epitaphs, disrespect and insubordination with impunity; and 3) the requirement to show the custom caused the constitutional violation is met because apparently it simply must follow that this custom caused the discriminatory denial of employment to Gore. (ECF No. 31 at 2-3).

Assuming for the moment that Gore could meet the standards of Monell in theory based on his rather conclusory arguments, Gore offers absolutely no evidence to establish any facts in support of his theory. As discussed *supra*, Gore failed to come forward with any evidence, as opposed to vague allegations in his Complaint, to establish his claim of discrimination in failure to hire. Regarding the additional required showing under Monell for municipal liability under § 1983, Gore again simply restates portions of the allegations from his Complaint and points to the complaint filed by another individual in another action. This is woefully inadequate to withstand summary judgment. Allegations, whether from the Complaint in this action or another,

---

This Court agrees.

are insufficient to defeat summary judgment. <u>Celotex</u>, 477 U.S. at 324; <u>Garcia</u>, 381 F. App'x at 213. Moreover, Gore does not adequately support the alleged custom or practice of discrimination required to establish liability.

Under a "custom" theory of municipal liability, "[a] plaintiff may establish a custom ... by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law," <u>Watson v. Abington Twp.</u>, 478 F.3d 144, 155–56 (3d Cir.2007) (citing <u>Andrews v. City of Philadelphia</u>, 895 F.2d 1469, 1480 (3d Cir.1990) (internal quotations omitted)). Use of that custom must show a deliberate indifference to the deprivation of constitution rights. <u>Beck v. City of Pittsburgh</u>, 89 F.3d 966, 972 (3d Cir. 1996). For purposes of failure to train theory, a plaintiff must show a pattern of similar constitution violations by untrained employees, <u>Connick v. Thompson</u>, 563 U.S. 51, 62 (2011), and generally may not rely on the unsatisfactory training in one instance. <u>City of Canton, Ohio v. Harris</u>, 489 U.S. 378, 390-91(1989). Rather, the Supreme Court has made it clear that "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessarily to demonstrate deliberate indifference for purposes of failure to train." <u>Connick</u>, 563 U.S. at 62 (internal quotations omitted). Plaintiffs can prove the required deliberate indifference by showing knowledge by the decision-makers that similar constitutional deprivations had previously occurred and knowledge by the decision-makers of ways to prevent the deprivations, and either a deliberate choice by them " not to pursue these alternatives or *acquiesce[nce] in a long-standing policy or custom of inaction.*" <u>Beck</u>, 89 F.3d at 972 (internal quotations omitted)(emphasis in original).

Gore simply asserts that discrimination based on race is the "custom" at Millcreek and asserts that his allegations that there is only one African American employee out of over one hundred employees combined with the allegations by Manus as to mistreatment of Manus suffices to support the finding of a custom of racial discrimination. Specifically, Gore opposes the motion for summary judgment, **not by citing to any evidence in the record such as affidavits**, deposition testimony or responses to discovery, but by alleging that Millcreek has discriminated in the past and by insisting that Manus, who has worked for Millcreek for over 20 years, "will testify that despite numerous complaints to management, racial epitaphs, [that] disrespect and insubordination by white employees, under his direction, occurs with impunity." (ECF No. 31 at 3). According to Gore, this establishes for summary judgment purposes a "custom" by Millcreek. (ECF No. 31 at 3). Finally, Gore contends that the "custom" caused the constitutional violation, stating "it follows that Millcreek Township, maintain a custom of racial discrimination, discriminated against [him] causing an unfair denial of his employment application." (ECF No. 31 at 3).

Combining the allegations of discrimination by Gore and Manus does not transform those allegations into evidence from which a reasonable jury could find that Millcreek had a policy or custom of discrimination or could find the required nexus between a custom and the claimed deprivation of rights. Gore likewise fails to provide any evidence regarding training or failure to train, other than perhaps speculation that there must have been a failure to train. McCraken v. Freed, 243 F. App'x 702 (3d Cir. 2007) (where plaintiffs provided no evidence in support of their failure to train claim, defendants were entitled to summary judgment); see also City of Canton,

489 U.S. at 390 ("focus must be on adequacy of the training program in relation to the tasks the [municipal employee inflicting injury] must perform," a showing that "the identified deficiency in a city's training program [is] closely related to the ultimate injury," and "that city's failure to train reflects deliberate indifference to the constitutional rights.").

In sum, Gore's argument, without proffering supporting evidence, is that: he was discriminated against in Millcreek's hiring decisions; Manus alleges that he was discriminated against in his work environment; and that Gore further alleges that others at some point must have been discriminated against in Millcreek's hiring decisions, and therefore, this taken together establishes a policy, custom or practice of discrimination that must have led to the first matter asserted—that he was discriminated against in Millcreek's hiring decisions. The argument is hopelessly circular, unsupported by any evidence and likewise inadequate. See Daniels v. School Dist. of Philadelphia, 982 F.Supp.2d 462, 478 (E.D. Pa. 2013)(scintilla of evidence that the School District Administrator who recommended plaintiff's termination was unaware of any School District policies against discrimination was insufficient).

The record lacks evidence, as opposed to allegation, speculation and conjecture, of any municipal policy or custom that caused a deprivation of Gore's right to be free from discrimination based on race. Thus, summary judgment should be granted in favor of Defendant Millcreek on Gore's claims for discrimination under § 1983 for the additional reasons that Gore did not adduce sufficient evidence of a policy, custom or practice of discrimination or of a causal nexus as is required for municipal liability.

## **4.**     **Race Discrimination - Retaliation**

Gore refers to "retaliation" in his Complaint, asserting that he was not hired because Millcreek was retaliating against him for Manus' support of Gore's application for employment. (ECF No. 2 ¶ 20(d)). The theory of retaliation is not flushed out by Gore either in the Complaint or in opposition to summary judgment, and Defendants appear to assume that the claim is perhaps one for retaliation for First Amendment activity, citing to "freedom of association" as a possible construct for the retaliation claim. (ECF No. 28 at 9 and n.3). Nowhere in the Complaint, however, does Gore specify that his claim is one regarding First Amendment rights, such as "freedom of association" or "free speech" rights.

In order to proceed on a retaliation claim predicated on the First Amendment, Gore must establish:  (1) that he engaged in activity protected by the First Amendment; (2) a retaliatory action by defendant sufficient to deter a person of ordinary firmness from exercising constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action. Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007). Similarly, to establish a *prima facie* case of retaliation under either Title VII or § 1981, Gore must show that: (1) he engaged in activity protected by Title VII or § 1981 to the extent such a claim is attempted; (2) the employer took an adverse employment action against him; and (3) there is a causal connection between the protected activity and the adverse employment action. Estate of Oliva ex rel. McHugh v. New Jersey, 604 F.3d 788, 798 (3d Cir. 2010) (§1981); Davis v. City of Newark, 285 F. App'x 899, 904 (3d Cir. 2008)(Title VII) (quoting Nelson v. Upsala Coll., 51 F.3d 383, 386 (3d Cir.1995)); see CBOCS West, Inc. v. Humphries, 553 U.S. 442

(2008)(section 1981 likewise bans retaliation against individuals who oppose discrimination).

Regardless of the construct used to analyze a claim of retaliation by Gore and regardless of whether Gore can proceed on a claim predicated on the protected conduct of another, as pointed out by Defendants, (ECF No. 28 at 9), Gore offers no evidence that Millcreek's failure to hire him was based on any retaliatory animus and offers no evidence at all in opposition to show that or how Manus supported his applications for employment and that Defendants knew it. Knowledge by Defendants of the protected co duct or the association with Manus by his support of Gore's application is required to show retaliatory animus here. Cf. Geraci v. Moody-Tottrup, Intern., Inc., 82 F.3d 578 (3d Cir. 1996) (to succeed on claim of pregnancy discrimination, plaintiff must allege and present evidence from which a rational jury could infer that the employer knew she was pregnant). Thus, Gore cannot succeed on any claim that he was not hired in retaliation for Manus' support of his job applications, whether based on First Amendment or any other retaliatory animus, as he proffers no evidence to show a causal connection and no evidence to show that or even how Manus supposedly supported his application.

Additionally, the Supreme Court has instructed that a claim brought against a municipality under § 1983 for retaliation for exercise of speech rights, the underlying statement or petition for which the municipality retaliated must have touched on matters of "public concern." Pickering v. Board of Ed., 391 U.S. 563, 568, (1968); Borough of Duryea v. Guarnieri, 564 U.S. 370, 393 (2011) (petition clause). Here, Gore does not identify a particular statement or petition. "Support" by Manus of Gore's application for employment would not appear to be a matter of public concern.

Gore has failed to adduce evidence from which a reasonable jury could find that any of the Defendants retaliated against him because another individual supported his application. Thus, summary judgment should be granted in favor of Defendants Millcreek and McGrath as to any claim for retaliation.

### **5.** **Claims against McGrath and Kujawa under PHRA for "aiding and abetting" discrimination**

As to Count III, Gore provides no argument in opposition to the motion as to the liability of McGrath and Kujawa under the PHRA. "[A]n individual employee cannot be held liable under Title VII," <u>Dici v. Commonwealth of Pennsylvania</u>, 891 F.3d 542 552 (3d Cir. 1996), however, the PHRA does provide for individual liability for discrimination in employment.

Section 955(e), 43 Pennsylvania Statutes, makes it unlawful:

> For any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice.

43 Pa. Stat. § 955(e).

Neither Defendant McGrath nor Defendant Kujawa are named as respondents or even mentioned anywhere in the dual filed PHRC/EEOC Charge, (ECF No. 28, Ex. 1), which is required to proceed against them for "aiding and abetting" discrimination under the PHRA. <u>See</u> 43 Pa. Stat. § 959 (requiring as part of the exhaustion of administrative remedies that the aggrieved person file a verified complaint with the PHRC stating the name of the individual alleged to have committed the unlawful discriminatory practice); <u>see</u> <u>Vincent v. Fuller Co.</u>, 616

A.2d 969, 974 (exhaustion of administrative remedies required under PHRA); <u>see</u> <u>also</u> <u>McQuaid</u>

<u>v. Acts Retirement Communities Southampton Estates</u>, 2005 WL 2989642 (E.D. Pa. Aug. 8,

2005) (dismissing claims under the PHRA against individuals not named as respondents in the

charge of discrimination); <u>but</u> <u>see</u> <u>Carswell v. Monumental Life Ins. Co.</u>, 2013 WL 4855335

(Sept. 11, 2013)(declining to dismiss where the individual defendants were not named as

respondents but nevertheless were named in the administrative charge). Thus, Gore cannot

proceed on his claim against Defendants McGrath and Kujawa under Count III for violation of

the PHRA.

      Additionally, as Defendants point out, there are no facts set forth in the Complaint or

supported by any evidence to establish the liability of Defendants McGrath or Kujawa for "aiding

and abetting" discrimination.  (ECF No. 28 at 12). The sum and substance of the allegations

regarding Defendants McGrath and Kujawa, are in paragraphs 7, 9, 10, 26, 29, 31, and 32. The

only allegations that could be fairly cast as factual allegations are that McGrath and Kujawa

interviewed Gore on more than one occasion, (ECF No. 2 at ¶ 26), including an interview by

Kujawa in 2002, that McGrath spoke with Gore and McGrath and that Kujawa interviewed Gore

in 2009 regarding the Streets Department Laborer position posted in 2009, (ECF No. 2 at ¶ 7, 9),

and that McGrath and Kujawa interviewed Gore regarding the January 3, 2012 posting for Streets

Department General Laborer, (ECF No. 2 at ¶ 10). In conclusory fashion, Gore alleges that

McGrath and Kujawa violated Gore's rights by refusing to evaluate Gore's application and

interview presentations "fairly, equitably and lawfully." (ECF No. 2 at ¶ 26), that "but for" race,

he would not have been denied employment by Millcreek, McGrath and Kujawa, (ECF No. 2 at

¶ 28), that as Township Supervisors McGrath and Kujawa "aided and abetted discrimination" prohibited by 43 Pa. Stat. § 955(e), (ECF No. 2 at ¶ 31), and that McGrath and Kujawa are sued in the individual capacity for purposes of Count III alleging violation of the PHRA. (ECF No. 2 at ¶ 32). Gore's Complaint does not even provide any factual allegations to establish conduct by McGrath and Kujawa that would have aided and abetted a discriminatory failure to hire him.

Moreover, Defendants provided signed Declarations of McGrath and Kujawa in support of summary judgment, asserting that although they are elected "Supervisors" of Millcreek Township on the Board of Supervisors, they would not have been Gore's supervisor, that they did not have authority to hire Gore, that any contact they had with Gore consisted of chance meetings, and that they did not ever interview or participate in any interviews of Gore. (ECF No. 28, Ex. 2, McGrath Declaration; Ex. 3, McGrath Declaration). In sum, there simply are no factual allegations in the Complaint and no evidence presented in opposition to summary judgment sufficient to support that McGrath or Kujawa did anything to aid and abet discrimination or that they engaged in any discriminatory treatment of him.

Accordingly, summary judgment should be granted in favor of Defendant McGrath on Count III for aiding and abetting discrimination in violation of the PHRA.

### 6.      Limitations arguments

Defendants also argue that the applicable statute of limitations bars any claims by Gore under § 1983 that accrued more than two years prior to Gore's institution of this action. (ECF No. 25 at 18-19). Specifically, Defendants assert than any claims regarding the failure to hire Gore as a Streets Department General Laborer in 2009 as complained of in paragraph 8 of the

Complaint, (ECF No. 2 at ¶ 8), and the failure to hire Gore as a Streets Department General

Laborer in early 2012, as complained of in paragraph 10 of the Complaint (ECF No. 2 at ¶ 10),

are time barred because the Complaint in this action was not filed until August of 2014. (ECF

No. 25 at 17-19).

As with Defendants' arguments on the liability of McGrath and Kujawa, Gore does not

offer any argument in opposition to the statute of limitations argument. The applicable statute of

limitations for Gore's claims of discriminatory or retaliatory failure to hire brought under § 1983

in violation of § 1981 and the Fourteenth Amendment is two years. Pearson v. Secretary Dept. of

Corrections, 775 F.3d 598, 602 (3d Cir. 2015); cf. Jones v. R.R. Donnelly & Sons Co., 541 U.S.

369, 383-384 (2004) (most analogous state statute of limitations applies as opposed to

Congressional enacted four-year "catchall" statute of limitations unless cause of action is brought

under statute enacted after December 1, 1990, or claim made possible due to post December 1,

1990 amendment to pre-existing statute, such that amendment to § 1981 making possible suit for

harassment or termination of employment, as opposed to failure to hire, qualifies harassment and

termination claims for four-year statute); 42 Pa. Cons. Stat. § 5524. Any claims under

§ 1983 that accrued prior to August 25, 2012, two years prior to the date on which Gore

instituted this action, would be time barred. Pearson, 775 F.3d at 602; Kach v. Hose, 589 F.3d

626, 639 (3d Cir.2009))("[A] § 1983 claim is governed by the statute of limitations that applies

to personal injury tort claims in the state in which such a claim arises."). Accordingly, the claims

brought pursuant to § 1983 for violation of § 1981 and the Fourteenth Amendment for the

alleged discriminatory failure to hire Gore for positions other than the position of Sewer

Department Laborer posted on November 27, 2012 and the position of Parks and Recreation Laborer posted on January 25, 2013 are time barred and summary judgment should be entered in favor of Defendants Millcreek and McGrath on the failure to hire claim under § 1983 for the 2009 and beginning of 2012 posted positions of Streets Department Laborer on this additional basis.

### 7. Failure to Exhaust Administrative Remedies

Gore alleges that he dual-filed the Charge of discrimination with the PHRC and EEOC in September of 2012, (ECF No. 2 ¶ 14), though it is dated November 12, 2012. The Charge provides that Millcreek discriminated against Gore when he was not hired as a Laborer in 2012. (ECF No. 28 at Exhibit 1). The Charge specifically indicated that Gore applied for an available Laborer position in July 2012, which appears to be the position of Streets Department General Laborer posted in January 2012, since other possible laborer positions were not posted until after July 2012.[8]

"Simply put, § 2000e-5(e)(1)[, 42 U.S.C.,] is a provision [in Title VII] specifying when a charge is timely filed and only has the consequence of limiting liability because filing a timely charge is a prerequisite to having an actionable claim." National R.R. Passenger Corp., 536 U.S. 101, 120 (2002) (distinguishing discrete acts such as failure to hire from possible continuing violation such as in case of hostile work environment). The PHRA likewise requires exhaustion

---

8

In particular, the Complaint indicates that the Sewer Department Laborer position was not posted until November 27, 2012 (ECF No. 2, Complaint, at ¶ 11), and the position of Parks and Recreation Laborer was not posted until 2013.

of administrative remedies before filing an action in court. <u>Hickman v. Amazon Fullfilment</u>, App. No. 16-1898, --- F. App'x ---, 2016 WL 5751406, at *2 (3d Cir. Oct. 4, 2016).

Defendants point out that Gore failed to exhaust administrative remedies under Title VII and the PHRA for any of the claims not contained in the Charge of discrimination. Specifically, they argue that the allegations in paragraphs 8, 9, 10, 11 and 21 were not included in the Charge filed with the EEOC and PHRC. (ECF No. 28 at 18). Gore again does not offer any argument or evidence in opposition regarding the failure to exhaust administrative remedies on the Title VII claims. As the only challenged failure to hire arguably falling within the Charge is the failure to hire for the position of Streets Department General Laborer posted in January 3, 2012, Gore's challenges to the failure to hire him for the previous position of Streets Department General Laborer in 2009, and the subsequent positions of Sewer Department Laborer and Parks and Recreation Laborer, posted after the Charge executed on November 12, 2012, would be barred for failure to exhaust administrative remedies. <u>Shenkan v. Potter</u>, 71 F. App'x 893, 895 (3d Cir. 2003) (continuing violation analysis does not apply where complaint alleges failures to hire, which are isolated, intermittent acts of discrimination). Summary judgment in favor of Defendants Millcreek and McGrath on claims under the PHRA and Title VII regarding positions other than the posted position of Streets Department Laborer in the beginning of 2012 should be granted on the additional basis that Gore failed to exhaust administrative remedies.

## III.    CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants' motion for summary judgment [ECF No. 24] be granted, that all claims against Defendant Joseph Kujawa be

dismissed for Plaintiff's failure to serve him within 120 days of the filing of the complaint in accordance with Rule 4(m) of the Federal Rules of Civil Procedure, and that judgment be entered in favor of Defendants Millcreek Township and Brian McGrath and against Plaintiff on all claims against them in this case.

In accordance with the Federal Magistrates Act, 28 U.S.C. § 636(b)(1), and Fed.R.Civ.P. 72(b)(2), the parties are allowed fourteen (14) days from the date of service to file written objections to this report and recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file objections will waive the right to appeal. <u>Brightwell v. Lehman</u>, 637 F. 3d 187, 193 n. 7 (3d Cir. 2011).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: November 2, 2016

cc:    The Honorable Nora Barry Fischer
       United States District Judge